IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUN 2 1 2011

David J. Bradley, Clerk of Court

| | |
|---|---|
| ARTHUR RENDON, § | |
| Plaintiff, § | |
| v. § | |
| § | |
| BROWNSVILLE INDEPENDENT SCHOOL § | |
| DISTRICT, BROWNSVILLE § | CIVIL ACTION NO. 10-CV-198 |
| INDEPENDENT SCHOOL DISTRICT § | |
| BOARD OF TRUSTEES MEMBERS § | |
| ROLANDO AGUILAR, JOE COLUNGA, § | |
| RUBEN CORTEZ AND RICK ZAYAS, § | |
| IN THEIR OFFICIAL CAPACITIES, AND § | |
| BRETT SPRINGSTON, IN HIS § | |
| OFFICIAL CAPACITY, § | |
| Defendants. § | |

MEMORANDUM OPINION AND ORDER

The Defendants in this case filed a Motion for Partial Summary Judgment with Respect to Plaintiff's Due Process Based Claims on September 25, 2010 [Doc. No. 14]. The Plaintiff filed a Response [Doc. No. 17], and the Defendants filed a Reply [Doc. No. 21]. This Court, after holding a hearing to consider pending motions, mooted the Defendant's Motion, dismissing it without prejudice [Doc. No. 24]. The Defendants then filed their Re-urged Motion for Partial Summary Judgment with Respect to Plaintiff's Due Process Based Claims [Doc. No. 34]. The Plaintiff responded, objecting to the Defendants' Motion [Doc. No. 36]. Having considered the filings of the parties, the Court is of the opinion that Defendant's Motion for Partial Summary Judgment should be GRANTED.

I. Background

Plaintiff Arthur Rendon ("Rendon") filed suit on August 23, 2010, against the Brownsville

Independent School District ("BISD"); BISD Board of Trustees members Rolando Aguilar, Joe Colunga, Ruben Cortez, and Rick Zayas in their individual and official capacities; and Brett Springston, Interim BISD Superintendent, in his individual and official capacity [Doc. No. 1]. He brought claims of First Amendment Retaliation, Fourteenth Amendment Due Process violations, Whistleblower Retaliation, and Defamation. *Id.* Rendon filed an Amended Complaint asserting the same claims on November 30, 2010 [Doc. No. 29]. Aguilar, Colunga, Cortez, Zayas, and Springston were dismissed from the suit in their individual capacities on December 3, 2010. Therefore, Plaintiff currently asserts the claims mentioned above against BISD and against the Board of Trustees members and the Superintendent in their official capacities.

The lawsuit arises from the non-renewal of Rendon's contract with BISD after the 2009-2010 school year. Rendon was a long-time employee with BISD; he served as a principal for several years and assumed the position of Administrator of Special Services in August 2006 [Doc. No. 29 at ¶20]. Rendon claims that in his position as head of the Special Services Department, the BISD department that provides services to children with special needs, he became aware of several corrupt practices within the department, including inadequate evaluation procedures, corrupt billing practices by legal counsel, and unfair handling of students' complaints. *Id.* at ¶¶ 20–51. After first raising the issues within BISD and to BISD's legal counsel and receiving no response, he reported the issues to outside authorities in December 2007 and January 2008. *Id.* at ¶¶ 52-53. He then informed all seven Trustees that he had reported these alleged violations. *Id.* at ¶ 62.

Rendon asserts that after he reported these problems, the corrupt billing practices largely ceased; however, Rendon alleges that in retaliation BISD and the Board of Trustees began a concerted effort to discredit him and to terminate his employment. *Id.* at ¶¶ 73-79, 83-101. He

claims that board members made it clear that they would try to "get rid of" Rendon and began to discredit him with false reports that he mismanaged his department. *Id.* In addition, during this time, BISD placed Rendon on a term contract instead of a continuing contract. Rendon signed this term contract with a term of one year for the 2009-2010 school year, in April 2009; in June 2009, he was placed on administrative leave with pay for the 2009-2010 school year. *Id.* at ¶ 88. Rendon received a notice, dated March 30, 2010 [Doc. No. 14-3], of recommendation for proposal of non-renewal of his term contract; and the Board of Trustees voted to approve the proposal of non-renewal on April 6, 2010 [Doc. No. 14-4]. Rendon received a detailed letter, dated April 12, 2010, with violations of BISD policy that he allegedly committed, supporting the proposal of non-renewal [Doc. No. 14-5].

This letter alerted Rendon to the option of appealing the employment decision before an independent hearing examiner under Texas Education Code Chapter 21 procedures. *Id.* Rendon, through counsel, requested a hearing examiner on April 27, 2010 [Doc. No. 14-6]. After BISD's counsel moved to disqualify the initially-appointed hearing examiner, BISD's counsel sent a letter stating that the parties had agreed on appointing Mr. Mark Frazier as the hearing examiner for Rendon's hearing [Doc. No. 14-11]. Rendon's attorney was copied on this letter, and the attorney also confirmed the agreement by his own letter [Doc. No. 14-12]. Rendon asserts in this Court that his attorney made this agreement against his instructions [Doc. No. 36]. On June 22, 2010, Rendon non-suited the matter, thus withdrawing from his Chapter 21 hearing [Doc. No. 14-38].

This putative Chapter 21 hearing is the focus of the Defendants' Motion for Partial Summary Judgment Regarding Due Process Based Claims. Defendants argue that the Chapter 21 hearing procedures, as established under Texas law, meet and exceed the minimum due process protections

required by the Fourteenth Amendment [Doc. No. 34 at 8-9]. The procedures, to summarize, permit the employee: (1) to invoke by written request a hearing before a hearing examiner with judicial powers; (2) to conduct discovery and take depositions; (3) to be represented by a person of the employee's choice; and (4) to hear evidence of grounds for non-renewal and to present evidence and cross-examine witnesses. Tex. Educ. Code Ann. §§ 21.253-21.256 (West 2006). The Texas Rules of Civil Evidence apply to the hearing, which is conducted in the same manner as a trial without a jury in a district court of the state of Texas. *Id.* § 21.256. Within 60 days of the request for a hearing, the hearing examiner must complete the hearing and make a written recommendation that includes findings of fact and conclusions of law, which must be sent to the parties, the president of the board of trustees, and the commissioner. *Id.* § 21.257. Once the board of trustees receives the recommendation, it must consider the recommendation and also permit each party to present an oral argument. *Id.* § 21.258(b). The board must announce a decision adopting, rejecting, or changing the examiner's recommendation. *Id.* §21.259. If dissatisfied, the employee may appeal the board's decision to the Commissioner of Education for the State of Texas; the employee is also entitled to judicial review of the Commissioner's decision through the state courts of Texas. *Id.* §§ 21.301-306.

Defendants argue that these procedures more than satisfy the requirements of the Fourteenth Amendment's Due Process Clause. They rely on *Frazier v. Garrison ISD*, 980 F.2d 1514 (5th Cir. 1993). In that case, the Fifth Circuit held that teachers who had been fired after repeatedly not passing a skills tests had not had their due process rights violated when they had been given more than one opportunity to pass the test, the opportunity to appeal the revocation of the certification to the Commissioner of Education, and the right to judicial review of that administrative decision in state court. *Id.* at 1530. Defendants argue that the Chapter 21 procedures available to Rendon far

exceed the approved procedures in *Frazier* because Rendon would have had the right to appeal to the Commissioner and to a Texas state court if he had not voluntarily withdrawn from the hearing process [Doc. No. 34 at 8-9].

In his response to the Defendants' Re-urged Partial Summary Judgment Motion, which is nearly identical to his first Response, Rendon argues that the facts outlined in his Second Amended Complaint, "that discovery will bear out, establish[] that the procedures followed by BISD were deliberately undermined and corrupted to obtain a specific result" [Doc. No. 36 at ¶ 1]. In particular, Rendon objects that part of the evidence used to justify his non-renewal was developed in termination proceedings for BISD's former superintendent, Hector Gonzales, in which Rendon did not participate; therefore, such findings are not binding on plaintiff because he never had a chance to address the claims. *Id.* at ¶ 4. He claims that he was never made aware of any allegations of wrongdoing or work-related misconduct until he received the letter detailing the proposal of non-renewal on April 12, 2010. *Id.* He also asserts that his attorney collusively agreed with BISD's counsel in selecting an independent hearing examiner because his attorney allegedly "ignored plaintiff's instructions and agreed with defendants' attorney on a hearing examiner." *Id.* at ¶ 11(d). Defendants, anticipating these arguments, assert in their Motion that Rendon, although he argues that his appeal was manipulated and therefore fruitless, cannot present evidence that the procedural safeguards of Chapter 21 are deficient because he did not await the decision of the hearing examiner or avail himself of future avenues of review [Doc. No. 34 at 10–11]. Furthermore, Defendants claim that all documents requested by Rendon in discovery during the Chapter 21 proceeding were produced in a timely fashion. *Id.*

Rendon also argues that the Due Process violations that he asserts have nothing to do with

his previous Chapter 21 non-renewal claims. He argues that the "U.S. Constitution requires governmental employers to abide by the due process clause, by providing fair and unbiased procedures to individuals' property, life and liberty interests. When an employee is treated unfairly by the government, he is said to have been denied due process" [Doc. No. 36 at ¶ 9]. It therefore appears that Rendon's claim for violation of Fourteenth Amendment Due Process is based on some vague notion of being mistreated by BISD, not on any alleged lack of process in the termination of his employment. The Defendants contend in their Reply [Doc. No. 21] to Plaintiff's first Response that Rendon *has* no conceivable due process claim separate from his Chapter 21 non-renewal claims. The Defendants argue that to have a due process claim based on adverse employment action, the plaintiff must first have a protected property interest in his employment [Doc. No. 21 at 2]. The Defendants emphasize that such property interests are created not by the Constitution but by state law. Since Texas is an employment-at-will state, absent Chapter 21 provisions, argue the Defendants, the Plaintiff has "no arguable property interest in his job whatsoever." *Id.* at 5.

Despite his objections to the Defendants' Motion for Partial Summary Judgment, Rendon provides no information beyond what he has already pleaded in his Second Amended Complaint. He has filed absolutely no summary judgment evidence and no attachments to any of his filings to support his argument that he has been denied due process.

II. Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant bears the burden of identifying those portions of the record

it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-25). Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 321-25. The nonmoving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322–23.

The court should not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The nonmoving party's burden "is not satisfied simply by creating some metaphysical doubt as to the material facts or by providing only conclusory allegations, unsubstantiated assertions or merely a scintilla of evidence." *Id.* (citations omitted). A court will resolve factual controversies in favor of the nonmoving party "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

III. Discussion

    A. Section 1983 Claim

Rendon asserts his due process claim against BISD, Board of Trustees members Rolando Aguilar, Joe Colunga, Ruben Cortez, and Rick Zayas in their official capacities, and Superintendent

Brett Springston in his official capacity, under 42 U.S.C. § 1983. To state a valid claim under § 1983, a plaintiff must "(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir.1994). A local government entity like an independent school district "cannot be held liable under a respondeat superior theory"; it may be held responsible only when the constitutional violation resulted from execution of a government's policy or custom. *Doe v. Dallas Independent School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citing *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 691, 694 (1978)).

B. Fourteenth Amendment Due Process Claim

The Fourteenth Amendment forbids government conduct that deprives "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Rendon does not declare explicitly what right he has been deprived of; therefore, this Court considers both a claim of deprivation of liberty and of property and addresses the property claim first.

1. Property Interest

To succeed on a due process claim based on a deprivation of property, the plaintiff must first establish a "legitimate claim of entitlement" to a property interest, as determined by state law. *Nunez v. Simms*, 341 F.3d 385, 387-88 (5th Cir. 2003). If such a property right exists, the Court should next consider whether the procedures afforded are constitutionally adequate. *Frazier*, 980 F.2d at 1514. For pre-termination procedure to be constitutionally adequate, as long as a full post-termination hearing is available, "before dismissing an employee, the employer need only provide the employee with written or oral notice of the charges raised against him, explain to the employee the nature of

the evidence of those charges, and afford the employee an opportunity to respond." *Browning v. City of Odessa*, 990 F.2d 842, 844 (5th Cir. 1993) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547–48 (1985)).

The key consideration is the *availability* of due process, not whether the plaintiff has taken full advantage of it. The Fifth Circuit has said that "no denial of procedural due process occurs where a person has failed to utilize the state procedures available to him." *Rathjen v. Litchfield*, 878 F.2d 836, 839–40 (5th Cir. 1989). For example, when a public employee failed to seek redress first through existing administrative grievance procedures, even if her demotion were fraudulently obtained, the employee was not "deprived of a constitutional right to procedural due process." *Id.* at 841; *see also Vicari v. Ysleta Independent School Dist.*, 291 Fed. Appx. 614 (5th Cir. 2008) (applying *Rathjen* to a former school administrator's claim). An employee cannot ignore the process duly extended to him and later complain that he was not afforded due process. *Galloway v. State of La.*, 817 F.2d 1154, 1158 (5th Cir. 1987).

a. Existence of a Legitimate Claim of Entitlement to a Property Interest

This Court first considers whether Rendon had a protected property interest in his employment. Case law makes clear that to support a due process claim based on a property interest, a plaintiff must establish a legitimate claim of entitlement to a property interest. *Nunez*, 341 F.3d at 387–88. As mentioned above, the existence of a property right in employment is determined by state law. *Id.* at 388. Therefore, the Court looks to Texas law to decide whether Rendon has established a property interest in his employment.

The Defendants have argued that apart from Chapter 21, Rendon had no legitimate claim of entitlement to a property interest because Texas is an employment-at-will state, meaning that absent

contractual relations, either party may end an employment relationship at will, with or without cause. *Garcia v. Reeves County, Tex.*, 32 F.3d 200, 203 (5th Cir. 1994). Certainly, Rendon would have no legitimate claim of entitlement to employment under Texas's employment-at-will standard. His term contract ended, by his own admission, in the summer of 2010; and BISD simply opted not to renew his contract. It did not terminate his employment while his year-long term contract was still in force. Although the Defendants do not argue this point, it is also doubtful that he would have a legitimate claim of entitlement under Chapter 21. Rendon's contract at the time of his non-renewal was a term contract,[1] with a term of one year (the 2009-2010 school year) [Doc. No. 14-19]. Regarding term contracts, the Texas Education Code states that "[a] teacher does not have a property interest in a contract beyond its term." Tex. Educ. Code Ann. § 21.204(e). Defendants have submitted a copy of Rendon's term contract, which defines his employment term as the 2009-2010 school year and specifically provides that the District may non-renew the contract in accordance with the Texas Education Code [Doc. No. 14-19 at 3]. They have also submitted copies of documents relating to Rendon's non-renewal, such as notice letters and board meeting minutes. Rendon has submitted no summary judgment evidence to establish a property interest in his continued employment. Therefore, since a Rendon did not have a property interest in a contract beyond its term and his employment was terminated by non-renewal in accordance with Texas law, Rendon cannot assert a legitimate claim of entitlement to his employment.

Further, any subjective expectation that Rendon might have that his contract would be renewed would be insufficient to override Texas's laws and BISD's policy. *See Nunez*, 341 F.3d at

---

[1]The Texas Code defines "Term Contract" as "any contract of employment for a fixed term between a school district and a teacher." Tex. Ed. Code § 21.201(3). Rendon's contract, which was also titled "Term Contract," clearly fits the Texas Code's definition.

391 ("[A] mere subjective 'expectancy' is not a liberty or property interest protected by the Due Process Clause."). In this context, his 24 years of employment at BISD and expectation of working several years more [Doc. No. 29 at ¶ 20] cannot create a legitimate expectation of a property interest; and Rendon has provided absolutely no evidence of any sort of guarantee of future employment.[2] Since under Texas law he cannot assert a property interest, his due process claim must fail.

b. Availability of Due Process

Even assuming that he can establish a legitimate property interest in his employment, Rendon cannot escape summary judgment on his claim because he did not pursue the process that was available to him. "An employee cannot ignore the process duly extended to him and later complain that he was not accorded due process." *Galloway*, 817 F.2d at 1158. As previously mentioned, the requirements of pre-termination due process are not very elaborate: the employee must merely be given notice and a chance to present his side of the story prior to termination. *Browning*, 990 F.2d at 844. Rendon was clearly afforded these two opportunities. Rendon received notice on March 30, 2010, of the proposed non-renewal of his contract [Doc. No. 14-3], well before the end of his 2009–2010 school-year term contract, which he states ended in June 2010 [Doc. No. 36 at ¶ 11b].

---

[2]The Fifth Circuit has allowed a property interest in expectation of employment without a firm contract in the field of education only in limited circumstances. For example, the court found that there might be a property interest in tenure at a law school when the plaintiff had submitted materials showing that tenure was automatic based on number of years employed. *Honore v. Douglas*, 833 F.2d 565, 568–69 (5th Cir. 1987). A property interest also existed when a teacher and superintendent had exchanged letters confirming the teacher's continuing employment and the school board had taken steps in reliance on the teacher's continuing employment. *Stapp v. Avoyelles Parish Sch. Bd.*, 545 F.2d 527, 532 (5th Cir. 1977). Rendon has asserted no facts and has submitted no evidence to suggest a mutually explicit understanding that his employment would extend beyond the 2009–2010 school year,nor does he assert that future discovery will allow him to show such a property interest. Further, while not controlling, the fact that he was put on leave for the entire preceding year would certainly be indicative of BISD's intent to distance itself from Rendon.

After receiving notice of the proposal of non-renewal, Rendon had the opportunity to seek relief through the Chapter 21 hearing procedure established under Texas law [Doc. No. 14-5 at 3]. He initially requested such a hearing, but he non-suited the matter on June 22, 2010, shortly before the date set for the hearing [Doc. No. 14-38]. He therefore did not avail himself of the opportunity to be heard at the independent hearing or at any of the appeals following.[3]

The fact that Rendon initiated the hearing process but did not complete it does not change the result that he cannot complain of a due process violation. He still did not seek redress through existing administrative procedures, even though it was offered to him, because he non-suited the matter before any holdings were reached. Furthermore, Rendon's contention that his hearing was hopelessly corrupt is unavailing. He has provided no evidence or even asserted facts to support his contention that the hearing examiner, the school district, and his attorney were "in cahoots" [Doc. No. 1 at ¶ 105]. If his attorney was "in cahoots" with his opposition, he clearly has legal remedies against that attorney separate and apart from his claims herein. In any event, even if the hearing examiner had colluded with BISD, Rendon would have had the opportunity to appeal to the Board of Trustees, then the Commissioner of Education, and finally to the state courts of Texas. Rendon, by non-suiting the issue, ignored the process offered to him regarding his employment. *See, e.g., Rodriguez v. Ysleta Indep. Sch. Dist.*, 217 Fed. App'x 294, 296 (5th Cir. 2007) (holding that a teacher, who claimed that the hearing examiner was biased and appealed up to the Commissioner yet failed to appeal to state court, had not been denied due process). Therefore, he cannot now raise

---

[3]The Texas Education Code's Chapter 21 Hearing also satisfies the requirements of post-termination due process. *See Rodriguez v. Ysleta Indep. Sch. Dist.*, 217 Fed. App'x 294, 296 (5th Cir. 2007) (affirming that Texas's procedures meet the constitutional minimum for post-termination due process).

a complaint that he was denied his property (his employment) without due process of law.

2. Liberty Interest

There is a line of cases recognizing that "[t]here might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972). The circumstances in which this right has been recognized, however, are narrow. A constitutional deprivation occurs "only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities. *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981). The employee must show that the employer "has made or is likely to make the allegedly stigmatizing charges public in any official or intentional manner." *Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir. 1975) (citations omitted). The Supreme Court has suggested that such stigmatizing charges must include allegations of "dishonesty, or immorality," and must "foreclose[] . . . freedom to take advantage of other public opportunities." *Roth*, 408 U.S. at 573. Yet "[m]ere proof . . that [a] record of nonretention in one job, taken alone, might make [an employee] somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" *Id.* at 574 n.13.

Initially, this Court notes that Rendon has not even alleged that BISD's actions have "foreclosed the freedom to take advantage of other public opportunities," the fundamental justification for a due process challenge based on deprivation of liberty. Moreover, Rendon cannot meet the requirements of the Fifth Circuit test for this type of claim. The Fifth Circuit has said that for a plaintiff to prevail on a § 1983 claim that a state entity infringed upon a cognizable liberty interest without due process, the plaintiff must show: (1) that he was discharged; (2) that

stigmatizing charges were made against him in connection with the discharge; (3) that the charges were false; (4) that he was not provided notice or an opportunity to be heard prior to his discharge; (5) that the charges were made public; (6) that he requested a hearing to clear his name; and (7) that the employer refused his request for a hearing. *Hughes v. City of Garland*, 204 F.3d 223, 226 (2000).

This Court does not need to engage in an analysis of Rendon's ability to meet every prong of this test because Rendon clearly cannot show that he was not provided notice or an opportunity to be heard prior to discharge or that he request and was denied a right to a hearing by his employer. He was given the opportunity to contest his termination, and the grounds for it, including any accusations of immoral behavior, before an independent Hearing Examiner; but he non-suited the matter before reaching the hearing. Just as his due process claim regarding deprivation of property must fail because he has failed to avail himself of the process available to him, his claim regarding deprivation of a liberty interest must fail for the same reason.

IV. Conclusion

Rendon has not, and cannot, show that he had a legitimate property interest in continued employment with BISD, given that he had been employed under a term contract. Texas law firmly establishes that there is no property right in employment beyond the term of a term contract. Even if Rendon were able to show a legitimate property interest in continued employment, the Defendants have presented evidence in their Motion for Partial Summary Judgment that Rendon was afforded due process before he was terminated from his position with BISD, but did not avail himself of it. Rendon has failed to point to specific facts that raise a genuine issue of fact on this issue. Since he was afforded an opportunity to be heard and to clear his name, any due process claim based on

deprivation of a liberty interest that Rendon might be able to assert must also fail.

Therefore, this Court grants the Defendants' Re-urged Motion for Partial Summary Judgment with Respect to Plaintiff's Due Process Based Claims [Doc. No. 34] as to all Defendants.[4]

Signed this 21st day of June, 2011.

Andrew S. Hanen
United States District Judge

---

[4]In addition to the reasons stated in this opinion, dismissal of the claims against Aguilar, Colunga, Cortez, Zayas, and Springston in their official capacities is also proper because "[a]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Therefore, since the entity in question (BISD) is named in this suit, the official capacity claims are "redundant and properly dismissed." *Anemone v. Metropolitan Transp. Authority*, 410 F. Supp. 2d 255, 264 n.2 (S.D.N.Y. 2006).